IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ESSEX INSURANCE COMPANY,**     :     **CIVIL NO. 1:CV-05-0364**
                     : 
           **Plaintiff**     : 
                     : 
           **v.**     : 
                     : 
**CHEMICAL FORMULA, LLP,**     : 
**d/b/a FORMULA TECHNOLOGY,**     : 
**JANITORIAL SUPPLY CENTER,**     : 
**INC., MIRRORED LAKE FLOOR**     : 
**SYSTEMS, INC., and**     : 
**SILVERLINE, INC.,**     : 
                     : 
           **Defendants**     : 

## M E M O R A N D U M

Before the court is Plaintiff's motion for partial summary judgment. (Doc. 29.) The parties have briefed the issues, and the motion is ripe for disposition. For the reasons that follow, the court will grant Plaintiff's motion in part and deny it in part.

**I.**        **Background**

     **A.**     **Factual History**

Chemical Formula Plus, LLP d/b/a Formula Technology (hereinafter "Formula Technology") manufactured a number of chemicals and floor care products including a floor care product known as Cold Fusion. Janitorial Supply Center, Inc. (hereinafter "Janitorial Supply") is a wholesale cleaning supply business. Janitorial Supply purchased Cold Fusion from Formula Technology and sold it to Mirrored Lake Floor Systems, Inc. (hereinafter "Mirrored Lake"), Paragon

Floor Systems, Inc. (hereinafter "Paragon"), and Silverline, Inc. (hereinafter "Silverline").  Mirrored Lake, Paragon, and Silverline used the Cold Fusion product in performing floor cleaning and janitorial services.  Mirrored Lake, Paragon, and Silverline allege that when Cold Fusion was applied to their customers' floors "the product proved to be nonconforming and defective and unfit for its intended use as a floor finish because it failed to resist normal wear, failed to retain a lasting finish, revealed traffic patterns, was discolored and unattractive in appearance."  (Compl. ¶ 14.)[1]  The undesirable result of the product required Mirrored Lake, Paragon, and Silverline to strip and restore their customers' floors.

Formula Technology notified Essex Insurance Company (hereinafter "Essex") of the possibility of a claim under its Commercial General Liability Policy. (Compl. ¶ 12.)  Subsequently, Essex issued a reservation of rights letter advising Formula Technology of its various rights to restrict coverage. (*Id.* ¶ 13.)  As predicted, Janitorial Supply, Mirrored Lake, Paragon, and Silverline filed suit against Formula Technology.  *See Janitorial Supply Center, Inc., et al. v. Chemical Formula Plus, LLP d/b/a Formula Technology*, No. 1-04-cv-0628 (M.D. Pa. filed March 24, 2004) (hereinafter referred to as the "Underlying Litigation").  The complaint in the Underlying Litigation seeks recovery for the cost of the product and incidental and consequential damages, including loss of profits, costs of restoring floor surfaces to which Cold Fusion was applied, and damage to commercial reputation and loss of goodwill.  (*Id.*)

---

[1]For purposes of the captioned matter, the parties do not dispute that Cold Fusion was non-conforming.  As provided by Plaintiff: "The issues before the Court in the Motion For Partial Summary Judgment are purely legal in nature and, though it may be possible that there are factual issues in the Underlying Litigation, the facts relating to this Motion for Partial Summary Judgment are not in dispute."  (Pl.'s Statement of Mat. Facts ¶ 2.)

B.     **Procedural History**

Essex filed for a declaratory judgment to define its obligations to Formula Technology with respect to the Underlying Litigation.  In response, Formula Technology along with Janitorial Supply, Mirrored Lake, Paragon, and Silverline filed their respective answers, affirmative defenses, and counterclaims.  (Docs. 8, 9.)  However, on October 13, 2005, default was entered against Formula Technology for failure to defend diligently.  (*See* Docs. 25-27.)  Therefore, the only remaining Defendants are Janitorial Supply, Mirrored Lake, Paragon, and Silverline.

II.     **Legal Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.* at 249.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply

sit back and rest on the allegations in its complaint.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial."  *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial."  *Celotex*, 477 U.S. at 322-23. " 'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.' "  *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**III.**        **Discussion**

Plaintiff Essex raises three primary arguments in its motion for partial summary judgment.  First, Plaintiff seeks to establish that claims for lost profits, damage to commercial reputation, and loss of goodwill are not "property damage" as defined by the policy, and thus, it does not have a duty to defend or indemnify with respect to these claims.  Second, Plaintiff asserts that the cost of the product and the cost to repair, replace or correct the product are excluded from coverage under the policy.  Finally, Plaintiff asserts that the policy's deductible applies to each person or organization that sustained damage because of alleged damage caused by Cold Fusion.  Defendants' responsive brief addresses each of Plaintiff's arguments and also argues that summary judgement should be entered on their behalf with respect

to the issues identified by Plaintiff regarding the interpretation and implementation of the insurance policy. After setting forth the applicable law governing insurance contracts, the court will address each argument in turn.

## A.    Applicable Law

The burden of establishing coverage under an insurance contract lies with the insured, while the burden of establishing policy exclusion, which preclude coverage, rests with the insurer.  *Erie Ins. Exch. v. Transamerica Ins. Co.,* 533 A.2d 1363, 1366 (Pa. 1987).  Minding these burdens, the court interprets insurance contracts as a matter of law.  *Sphere Drake v. 101 Variety, Inc.,* 35 F. Supp. 2d. 421, 427 (E.D. Pa. 1999).

The primary consideration in evaluating an insurance contract is to "ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.,* 469 A.2d 563, 566 (Pa. 1983).  However, the court must keep in mind that insurance coverage is evaluated in light of the reasonable expectations of the insured. *Dibble v. Sec. of Am. Life Ins. Co.,* 590 A.2d 352, 354 (Pa. Super. Ct. 1991).  To determine the reasonable expectations of the insured and the overall intent of the parties, the court must read the policy as a whole, construe the policy according to the plain meaning of its terms, *C.H. Heist Carbide Corp. v. American Home Assurance Co.,* 640 F.2d 479, 481 (3d Cir. 1981), and examine the totality of the insurance transactions, *Britamco Underwriters, Inc. v. Grzeskiewicz,* 639 A.2d 1208, 1210 (Pa. Super. Ct. 1994).

If the plain terms of the policy are susceptible to more than one interpretation, they are regarded as ambiguous, and all ambiguous terms must be

construed against the insurer.  *C.H. Heist Carbide,* 640 F.2d at 481.  However, when terms are clear and unambiguous an insured "may not complain that his or her reasonable expectations were frustrated."  *Grzeskiewicz,* 639 A.2d at 1210.

### B.    Claims for Lost Profit, Damage to Commercial Reputation, and Loss of Goodwill

In the Underlying Litigation, Mirrored Lake, Paragon, and Silverline seek to recover lost profits, damage to commercial reputation, and loss of goodwill resulting from the application of Cold Fusion.  Plaintiff's motion for summary judgment seeks a declaratory judgment that it has no duty to indemnify for damages such as lost profits, damage to commercial reputation, and loss of goodwill resulting from the application of Cold Fusion.  According to Plaintiff, said damages are intangible and are not property damage as defined by the insurance policy; thus, these damages are not covered under the insurance policy.[2]  Mirrored Lake, Pargon, and Silverline respond that claims for loss of profits, damage to commercial reputation, and loss of goodwill are remedies to compensate claimants for losses sustained "because of" physical injury to tangible property.  For the following reasons, the court finds Plaintiff's argument to be convincing.

To begin, the court looks to the insurance policy, which provides in relevant part that

> [Essex] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

---

[2]Plaintiff correctly notes that it owes no duty to indemnify Formula Technology for events that are not covered by the policy. *See Sphere Drake*, 35 F. Supp. 2d at 428 (citing *Germantown Ins. Co. v. Martin*, 595 A.2d 1172 (1991)("[I]f there is no possibility that any of the underlying claims could fall within the coverage of the policy, then the insurer has no duty to defend or indemnify.").

> However, we will have no duty to defend the insured
> against any "suit" seeking damages for "bodily injury" or
> "property damage" to which this insurance does not apply.

(Pl.'s Mot. Summ. J., Ex. B at 21.)  Property damage as defined by the policy

means: "physical injury to tangible property, including all resulting use of the property

. . . or . . . loss of use of tangible property that is not physically injured."  (*Id.* at 29.)

According to Plaintiff, damages such as lost profits, damage to

commercial reputation, and loss of goodwill do not constitute a physical injury to

tangible property.  In support of its position, Plaintiff cites to *Lucker Manufacturing.

v. Home Insurance Co.*, 23 F.3d 808 (3d Cir. 1994).  *Lucker* provides that "tangible

property is property that can be felt or touched, or property capable of being

possessed or realized."  *Id.* at 818 (citing *In re Estate of Mcfarlane*, 459 A.2d 1292

(Pa. Super. 1983)).  In contrast to tangible property, intangible property "is defined

as property that does not have intrinsic value but which is merely representative or

evidence of value. . . ."  *Id.  Lucker* went on to cite with approval *U.S. Fidelity &

Guaranty Co. v. Barron Industries, Inc.*, 809 F.Supp. 355, 360 (M.D. Pa. 1992),

and stated that *U.S. Fidelity* stood for the position that

> under Pennsylvania law CGL policy does not cover
> intangible property, such as property that represents value
> but has no intrinsic marketable value of its own (e.g., stock,
> investments, copyrights, promissory notes); property
> regarded as intangible rights (e.g., goodwill and reputation);
> or economic interests (e.g., overhead, profits, investment
> value, and productivity)

*Id.*[3]

---

[3]*Lucker* also cited with approval *Palmolive Co. v. Conway*, 43 F.2d 226, 227 (D. Wis. 1930) for the position that "trademarks, trade secrets, and goodwill [are] not tangible property."  *Id.* at 819.

Similar to the policy in the instant case, the disputed insurance policy in *U.S. Fidelity* provided that the insurer was obligated to " '[p]ay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.' " *U.S. Fidelity & Guar. Co.*, 809 F.Supp. at 359-60.  As aptly noted by *U.S. Fidelity*:

> The boundaries of the "property damage" definition can be visualized by considering a third party's factory which collapses through an insured's negligence. The factory is tangible property and the property damage definition is satisfied. The lost profits suffered by the third party as a result of the factory's collapse, however, are economic losses which are intangible and thus, outside the "property damage" definition. Thus, the collapse of the factory may constitute "property damage" while injuries flowing from it do not.

*Id.* (citing Laurie Vasichek, *Liability Coverage for "Damages Because of Property Damage" Under the Comprehensive general Liability Policy,* 68 Minn. L. Rev. 795, 799 (1984)).

Defendants assert that *U.S. Fidelity*'s statements regarding lost profits and goodwill were dicta removed from the discussion of specific policy or facts. While the court notes that in *U.S. Fidelity* the court found that property damage had occurred,[4] the court believes that the logic of *U.S. Fidelity* is highly instructive. More importantly, the court notes that in *Lucker*, the Third Circuit cited to *U.S. Fidelity* with approval.  *Lucker Mfg.*, 23 F.3d at 818.  With respect to *Lucker*,

---

[4]The *U.S. Fidelity* court provided that "[l]oss of use of tangible property occurs when the insured's product is incorporated into a larger tangible entity and the incorporated product causes the entire entity to fail." *Id.*  In *U.S. Fidelity*, the insured had incorporated certain products in a gasification facility that in turn caused a loss of the use of the facility.  *Id.*  As the court will discuss, the issue in the instant case is not loss of use.

Defendants assert that it is also factually distinct from the captioned matter and not applicable.  While the court recognizes that the factual scenarios of *Lucker* and the instant case differ, the *Lucker* court discussed in detail the definition of tangible property and intangible property and how intangible property is treated under Pennsylvania insurance law.  Therefore, the court finds Plaintiff's reliance on *Lucker* to be warranted.

On the other hand, the court finds Defendants' reliance upon *Federal Insurance Co. v. General Machine Corp.,* 699 F. Supp. 490, 496 (E.D. Pa. 1988); *Central Armature Works v. American Motorists Insurance,* 520 F. Supp. 283, 289 (D. D.C. 1980); and *Mattiola Construction Corp. v. Commercial Union Insurance Co.,* 60 D. & C. 4th 412, 2002 WL 434296 *4 (C.P. Phila. 2002) for the position that lost profits are covered under a general liability insurance policy to be misplaced.  In *Mattiola*, the court found that the liquidated damages sought were covered under the insurance policy; however, the court specifically found that those damages were the result of the loss of use.  Similarly, in *Federal Insurance Company* the indemnity claim sought lost profits as a result of the loss of use of an electric generating plant. Finally, in *Central Armature Works*, the issue of damages also revolved around the issue of the loss of use.

In the instant case, the indemnity claims do not arise out of a loss of use; rather, they arise out of intangible damages that occurred after the physical damage occurred.  Defendants fail to establish a causal link between these events and a loss of use; therefore, these cases are not applicable.  Moreover, the court notes that the insurance policy specifically addresses the "loss of use of tangible property that is not physically injured."  (Pl.'s Mot. Summ. J., Ex. B at 29.)  Thus, if

the issue were loss of use, the insurance policy would provide for indemnification. However, the claims of loss of profits, damage to commercial reputation, and loss of goodwill do not arise out of a loss of use; therefore, such claims represent intangible damages.

Defendants also assert that the claims of loss of profits, damage to commercial reputation, and loss of goodwill are remedies to compensate claimants for losses sustained because of physical injury to tangible property.  Defendants cite to the specific wording of the policy, which states that Plaintiff will pay all sums that Formula Technology "becomes legally obligated to pay as damages because of  . . . 'property damage' to which this insurance applies."  (*Id*. at 20.)  According to Defendants, the intangible damage claims represent the incidental and consequential damages that flowed from the tangible injury.

As stated, "an insurance policy must be . . . construed according to the plain meaning of its terms," *C.H. Hesit Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir. 1981), and "[the court] must construe a contract of insurance as a whole and not in discrete units."  *Koval v. Liberty Mut. Ins. Co.*, 531 A.2d 487, 489 (Pa Super. 1987).  Finally, "[a] court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them."  *St. Paul Fire and Marine Ins. Co. v. U.S. Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981).

The court finds Defendants' interpretation of the policy to be too attenuated and beyond the plain reading of the policy.  Moreover, Defendants' argument would thwart the reasonable expectations of the parties.  Commenting

upon why insurance companies "reasonably" might want to exclude coverage for intangible damages, *Lucker* stated that

> estimating the potential liability for purposes of setting the premium might be very difficult, or even if the premium could be calculated, insuring against such liability might expose the company to such increased costs because of a great variance in liability that a CGL policy might become prohibitively expensive.

*Lucker Mfg.*, 23 F.3d at n.13.  In the instant case, the argument that any damages that flowed from physical damages should be covered simply opens the door too wide to be considered reasonable.  Furthermore, the court notes that Defendants do not provide any case law that would support such a strained reading of the policy.

The court finds that the plain meaning of the policy aptly defines property damage, and that loss of profits, damage to commercial reputation, and loss of goodwill are not tangible property damage as defined by the policy.  The court rejects Defendants' assertion that the "because of" clause operates as an open door to any alleged injury stemming from property damage.  Accordingly, the court will grant Plaintiff's partial motion for summary judgment with respect to this issue.

### C.    **Indemnity for Cost of Product**

According to Plaintiff, Defendants are seeking to recover the cost of the allegedly defective Cold Fusion in the Underlying Litigation.  Plaintiffs assert that reimbursement for the cost of Cold Fusion is barred from coverage by exclusions contained in the insurance policy.  Defendants counter that the insurance policy does

not exclude costs incurred by Defendants in purchasing Cold Fusion.  The applicable

exclusions Plaintiff relies upon are set forth as follows:

> This insurance does not apply to:
>
> * * *
>
> (k.) Damage To Your Product
>
> "Property damage" to "your product" arising out of it or
> any part of it.
>
> * * *
>
> (n.) Recall Of Products, Work Or Impaired Property
>
> Damages claimed for any loss, cost or expense incurred by
> you or others for the loss of use, withdrawal, recall,
> inspection, repair, replacement, adjustment, removal or
> disposal of:
>
> (1) "Your product";
>
> (2) "Your work"; or
>
> (3) "Impaired property"'
>
> if such product, work or property is withdrawn or recalled from
> the market or from use by any person or organization because
> of a known or suspected defect, deficiency, inadequacy or
> dangerous condition in it.

(Policy, App., Ex. B, Section I, at 4.)  The court will address each of these

exclusions in turn.

As stated, Plaintiff bears the burden of establishing that the policy

exclusion precludes coverage.  *Erie Ins. Exch.,* 533 A.2d at 1366.  To begin, the

court notes that Plaintiff fails to cite to any case law to support its position that the

exclusions apply.  Plaintiff argues that the plain meaning of the exclusions speak for

themselves; however, Defendants also assert that the plain meaning of the policy

favors their interpretation.

Plaintiff argues that exclusion (k) precludes any recovery for the actual cost of the product.  Defendants respond that the product, Cold Fusion, was not itself damaged.  Instead, Defendants state that the damage occurred after the product was applied to the floors.  The court agrees with Defendants' contention.  The plain language of the policy indicates that exclusion (k) applies when damage occurs to the product itself.  It is alleged that Cold Fusion is a defective product rather than a product that was subject to damage from another source.  Therefore, exclusion (k) does not preclude coverage of the cost of purchasing Cold Fusion.

Plaintiff next asserts that exclusion (n), commonly referred to as a "sistership" exclusion, prevents Defendants from recovering costs from any damages incurred by the Defendants in the underlying litigation for the loss of use, replacement, or removal of Cold Fusion if the product is withdrawn from the market because of a defect.  Defendants argue that this exclusion only applies to expenses incurred by an insured in withdrawing "sister" products from the market after a defect has been identified, and thus, the exclusion does not apply to the present case.

The Third Circuit addressed the sistership clause in *Imperial Casualty & Indemnity Co. v. High Concrete Structures, Inc.,* 858 F.2d 128, 136-37 (3d Cir. 1988) and explained that

> [w]hen a product is withdrawn because of defective performance, a "sistership" provision excludes coverage for costs incurred when a related, "sister" product is also withdrawn because its relationship to the defective product renders its quality suspect. Sistership provisions are not intended to exclude from coverage damages arising from the withdrawal of the product that raised suspicions. *A fortiori*, they do not exclude coverage of damages arising from a defective product when no sister products are involved.

*Id.* (citation omitted).

With respect to the instant case, the court finds that exclusion (n) does not apply to the costs associated with the purchase of Cold Fusion.  First, neither Plaintiff nor Defendants assert that the product was ever recalled or withdrawn from the market.  Nor has it been alleged that Defendants used the product after it was recalled.  Second, the Cold Fusion used by Defendants was the product that raised the suspicions of defectiveness.  Therefore, damages arising from the original suspicious product do not fall within the exclusion.

Plaintiff also contends that Defendants could receive a double recovery if they are permitted to recover for the cost in refinishing the floors and the replacement product in addition to the cost of Cold Fusion.  Defendants acknowledge that Pennsylvania courts do not permit double recovery for the same damages.  *See Rossi v. State Farm Auto Ins. Co.,* 465 A.2d 8, 10 (Pa. Super. Ct. 1983) (citations omitted) ("An injured party cannot recover twice for the same injury.").  The court will not permit Defendants to receive a double recovery.  A Defendant is entitled to the cost of Cold Fusion or the cost of a replacement product.

Accordingly, the court finds that neither exclusion (k) nor (n) precludes coverage for the cost of Cold Fusion.  The court will deny Plaintiff's motion with respect to this issue; however, the court will bar any double recovery on the part of any Defendant.

## C.   <u>Deductible</u>

Plaintiff's final argument revolves around the issue of the insurance policy deductible.  Plaintiff argues that the deductible of 2,500 dollars applies to

each person or organization sustaining damage.  Specifically, Plaintiff interprets the deductible provision to provide that "if there is an application to a floor which causes damage, then there is a deductible for that application."  (Pl.'s Br. Summ. J. at 19 (quoting Deposition of Richard L. Dowling, Ex. F at 48-49.))[5]  In response, Defendants argue that only a single 2,500 dollar deductible applies to the claim because the policy was structured as a "per claim" policy and only one claim, *i.e.,* one lawsuit, has been filed against Formula Technology in the Underlying Litigation.

The Deductible Endorsement provides in relevant part that

> [o]ur obligation under . . . property damage liability . . . to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts states in the Schedule above.  The deductible amount stated above shall be applicable to each claim . . . .

The Deductible Endorsement further states that "[t]he deductible amount stated above applies under the coverages respectively to all damages sustained by one person, or organization, as the result of any one occurrence."[6]  (Doc. 31-3 at 8.)

As provided by the Third Circuit:

The general rule is that an occurrence is determined by the cause or causes of the resulting injury. The majority of jurisdictions employ the cause theory. Using this analysis, the court asks if there was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage.

---

[5]The court notes that Plaintiff fails to cite to any case law supporting its position.

[6]Additionally, there is a per item per claim option that provides that "[i]f this box is so marked, the basis of deductible is amended to apply 'on a per item per claim' property damage deductible basis." (Doc. 31-3 at 8.)  The per item per claim option was not chosen by Formula Technology.

*Liberty Mut. Ins. Co. v. Treesdale, Inc*., 418 F.3d 330, 335 (3d Cir. 2005).  While Liberty Mutual dealt with an asbestos claim, the logic of *Liberty Mutual* applies to the instant case.  *See also Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir. 1982) (For purposes of sexual harassment suits the court stated that "[t]he fact that there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence."); *see also Champion Intern. Corp. v. Continental Cas. Co.*, 546 F.2d 502 (2d Cir. 1976).

"As long as the injuries stem from one proximate cause there is a single occurrence." *Liberty Mut. Ins. Co.*, 418 F.3d at 335.  The term occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general conditions." (Doc. 31-3 at 12.)  The court finds that the exposure occurred when Formula Technology sold Cold Fusion, and during this process the exposure was continuous and repeated. *Champion Intern. Corp.*, 546 F.2d at 506. Therefore, the injuries stem from one proximate cause: Formula Technology selling the allegedly defective Cold Fusion.

The court notes the difference between a "per claim" deductible and a "per occurrence" deductible.  "Per claim" applies to damages incurred by one person or organization.  *Reynolds v. S & D Foods,* 822 F. Supp. 705, 707 (D. Kan. 1993). The policy in the instant case contains a "per claim" deductible, and therefore, a separate deductible is applicable to each of the Defendants.  Thus, while the court finds that there is only one occurrence for purposes of the deductible, the court finds that the 2,500 dollar deductible is applicable to Mirrored Lake, Paragon, and

Silverline individually since each Defendant has a claim against Formula Technology.

Plaintiff also asserts that the deductible endorsement in the policy relates solely to Formula Technology, and that the deductible endorsement has been conclusively resolved against Formula Technology by operation of the entry of default against Formula Technology.  (Doc. 26.)  The court has previously addressed this issue when it ruled on Plaintiff's motion *in limine* and provided that "[t]here is no dispute that Defendants have standing in this action.  *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345 (3d Cir. 1986)."  (Doc. 46.)  Moreover, the court's order provided Defendants the opportunity to amend their answer to address the deductible issue.  (*Id.*)

Thus, for the aforementioned reasons, the court will deny Plaintiff's motion for summary judgment with respect to the deductible issue.

### D.      Defendants' Motion For Summary Judgment

Defendants in response to Plaintiff's motion for summary judgment, assert that summary judgment should be entered in their favor with respect to the issues identified by Plaintiff regarding the interpretation and implementation of the

insurance policy.[7]  For the reasons that follow the court will deny Defendants'
request.

Because the court will grant Plaintiff's motion with respect to the issue
of intangible damages, Defendants' request will be denied with respect to this issue.
With respect to the remaining two issues, the court does not feel that a separate
issuance of summary judgment on behalf of the Defendants is necessary.  The court
believes that the denial of Plaintiff's motion for summary judgment with respect to the
remaining two issues satisfactorily sets the parameters for trial.  Accordingly, the
court will deny Defendants' request.

## IV.       <u>Conclusion</u>

In accordance with the foregoing discussion, the court will grant
Plaintiff's motion for summary judgment with respect to its claim that it does not
have a duty to defend or indemnify Defendants' claims for lost profits, damage to
commercial reputation and loss of goodwill.  The court will deny Plaintiff's motion
with respect to Plaintiff's argument that the cost of the product and the cost to repair,
replace or correct the product are excluded from coverage under the policy.  The
court will deny Plaintiff's motion with respect to its argument that the policy's

---

[7]Federal Rule of Civil Procedure 56(b) provides:

For Defending Party. A party against whom a claim, counterclaim, or cross-claim is
asserted or a declaratory judgment is sought may, at any time, move with or without
supporting affidavits for a summary judgment in the party's favor as to all or any part
thereof.

Fed. R. Civ. P. 56 (b)

deductible applies to each person or organization that sustained damage because of alleged damage caused by Cold Fusion and that the deductible should apply to each separate application of Cold Fusion that allegedly caused damage.  Finally, the court will deny Defendants' request for summary judgment as to the interpretation and application of policy provisions identified in this memorandum of law.  An appropriate order will issue.


                                    /s/ Sylvia H. Rambo
                                    SYLVIA H. RAMBO
                                    United States District Judge


Dated: April 7, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ESSEX INSURANCE COMPANY,** | : | **CIVIL NO. 1:CV-05-0364** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CHEMICAL FORMULA, LLP,** | : | |
| **d/b/a FORMULA TECHNOLOGY,** | : | |
| **JANITORIAL SUPPLY CENTER,** | : | |
| **INC., MIRRORED LAKE FLOOR** | : | |
| **SYSTEMS, INC., and** | : | |
| **SILVERLINE, INC.,** | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS
HEREBY ORDERED THAT** Plaintiff's motion for summary judgment (Doc. 29.)
is **GRANTED** in part and **DENIED** in part as follows**:**

(1) Plaintiff's motion for summary judgment with respect to its claim that
it does not have a duty to defend or indemnify Defendants' claims for lost profits,
damage to commercial reputation and loss of goodwill is **GRANTED**.  The Clerk of
Court is to defer the entry of judgment on this issue until further order of the court.

(2) Plaintiff's motion with respect to Plaintiff's argument that the cost of the product and the cost to repair, replace or correct the product are excluded from coverage under the policy is **DENIED**.

(3) Plaintiff's motion with respect to its argument that the policy's deductible applies to each person or organization that sustained damage because of alleged damage caused by Cold Fusion and that the deductible should apply to each separate application of Cold Fusion that allegedly caused damage is **DENIED**.

(4) Defendants' request for an entry of summary judgment in their favor as to the interpretation and application of policy provisions identified in this memorandum of law is **DENIED**.


/s/ Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge


Dated:  April 7, 2006.